IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JILL and ROBERT WEBB in their own proper persons, and as parents and next friends of their minor children, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 6241 |
| v. | ) ) | Judge Wayne R. Andersen |
| | ) | Magistrate Judge Geraldine Soat Brown |
| CBS BROADCASTING, INC., a foreign Corporation, and TRACY REARDON, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Judges do not enjoy entering sanctions against parties or attorneys. But sometimes a party's failure to comply with its obligations under the Federal Rules of Civil Procedure justifies serious consequences. This, regrettably, is such a situation. For the reasons set out below, defendant CBS Broadcasting, Inc.'s Motion for Sanctions [dkt 50] is granted in part and denied in part without prejudice.

### BACKGROUND

This case involves a claim of breach of privacy. In their Amended Complaint, plaintiffs Jill and Robert Webb ("the Webbs") allege that they, Craig Stebic (Jill Webb's brother) and NBC broadcaster Amy Jacobson were videotaped without their consent by defendant Tracy Readon (a neighbor of Stebic) and/or CBS employee Mike Puccinelli, and that defendant CBS Broadcasting Inc. ("CBS") broadcast the videotape. (Am. Compl.) [Dkt 30.] The Webbs assert state law claims of intrusion upon seclusion and intentional infliction of emotional distress. (*Id*.)

1

On January 26, 2010, the District Judge referred the case to this court for discovery supervision. [Dkt 45.] Consistent with this court's standard practice, an initial status date was set for February 18, 2010, and the parties were required to submit an initial status report. [Dkt 47.][1] The initial status report filed by the parties and signed electronically by the Webbs' attorney (John De Rose) and CBS's attorney (Brian Sher), stated in part:

> Both parties have promulgated written discovery. CBS responded to plaintiffs' written discovery requests on November 25, 2009. Plaintiffs have agreed to provide their responses to CBS's written discovery requests, which were served on November 19, 2009, not later than February 18, 2010, the date of the Initial Status Conference before this Court.

(Initial Status Report at 2.) [Dkt 48.] Thus, the initial status report told the court three things: (1) both sides were aware that the initial status hearing was set for February 18, 2010; (2) the Webbs acknowledged that their discovery responses were two months overdue and agreed to produce them "not later than" February 18; and (3) CBS had served its responses to written discovery several months earlier.

As scheduled, the case was called for status hearing on February 18, 2010. CBS's local counsel was present and its primary counsel traveled from the District of Columbia for the hearing. No one appeared on behalf of the Webbs. Because the Webbs' discovery responses had not yet been served, CBS's counsel asked for an order compelling production. Notwithstanding the fact that the Webbs' counsel had agreed to produce the responses "not later than" February 18, the court allowed an additional day, ordering the Webbs' responses by February 19, 2010, expecting that the responses might already be in the mail. [Dkt 49.]

---

[1] The first date set for the initial status hearing was reset at the parties' request to February 18, 2010. [Dkt. 46, 47.]

On February 26, 2010, CBS filed the present motion, stating that February 19 had come and gone but the Webbs served no discovery responses. (Def.'s Mem. Mot. Sanctions at 2.) [Dkt 50, 51.] The present motion requests an order precluding the Webbs from relying on any documents or the testimony of any witnesses beyond those disclosed by CBS. (*Id*. at 5.) Alternatively, it requests an order for full production and an award of expenses including attorneys' fees. (*Id*. at 5-6.) The motion was noticed for presentment on March 5, 2010. [Dkt 53.]

On March 2, 2010, CBS filed a supplement to its motion, stating that it had received discovery responses from the Webbs with a proof of service showing mailing on February 26. (Def.'s Suppl. Mem. at 1.) [Dkt 54.] But, in addition to being late, the interrogatory answers were not signed or verified, and no documents were produced. (Def.'s Suppl. Mem., Ex. A.) The Webbs responded to each document request 1 through 9 by stating, "None. Investigation continues." They failed to respond to document requests 10 through 29 in any way.

The Webbs responded to CBS's motion on March 4, 2010, acknowledging that their responses were "tardy" but saying that the Webbs' counsel had sent the discovery responses "on February 26, 2010, *before* they received notice" of the motion, not after. (Pls.' Resp. Mot. Sanctions at 3, emphasis in original.) [Dkt 55.] Also, they argued, they did not wilfully violate the February 18 order because Jessica Hill, the attorney working on the discovery responses, does not get the electronic filing notices, so she was not aware of the order entered on February 18 until she received the motion for sanctions. (*Id*. at 4-5.) Notably, the only attorney of record for the Webbs at that time was Mr. De Rose. The Webbs argued that an unidentified "law clerk" failed to docket dates. (*Id*. at 4.)

Ms. Hill appeared at the hearing the next day on CBS's motion for sanctions. The reason Ms.

Hill was not getting electronic notice of orders and filings in this case is that she had never filed an appearance as counsel, as required by Local Rule 83.16.[2] Again, she blamed "staffing issues" for failing to comply with orders.

As to the lack of documents, Ms. Hill again maintained that the Webbs have "no documents" responsive to the requests, even though they are claiming as damages medical treatment for the anxiety allegedly caused by CBS's actions. Ms. Hill argued that CBS could get any documents supporting the Webbs' medical damages by subpoenaing the providers. The motion was continued for hearing on March 9, 2010, and the Webbs were ordered to provide an affidavit regarding their search for documents by that date. [Dkt 62.]

At the hearing on March 9, 2010, Mr. De Rose appeared for the Webbs. He tendered to the court two identical affidavits, one signed by Jill Webb and one signed by Robert Webb, which state in relevant part:

> 2. I thoroughly read the [defendant's] Interrogatories and Requests for Production of Documents, understood each of them, and answered them truthfully and completely.
>
> 3. In response to the Requests for Production of Documents, I considered each request and did a full search to see if I was in possession of any of the documents requested.
>
> 4. I was not and am not in possession or control of any of the documents requested.

(Affidavits of Jill Webb and Robert Webb.) [Dkt 74, 75.]

At the March 9 hearing, Mr. De Rose also told the court how the Webbs' responses to discovery came to be served on CBS. He said that on Friday, February 26, at 3:30 p.m when he

---

[2] Ms. Hill subsequently sought and was given leave to appear as additional counsel for the Webbs on March 11, 2010. [Dkt 66, 67.]

received CBS's motion for sanctions, he went into Ms. Hill's office and asked, "Where are the answers to discovery in the Webb case?" Ms. Hill told him that they were out for signatures. Mr. De Rose then told Ms. Hill, "Drop what you're doing right now and put them in the mail unsigned with a letter saying that they're out for signatures."

Mr. De Rose's description directly contradicts the Webbs' response to the motion for sanctions, which states: "Plaintiffs' counsel sent the discovery responses to the attorneys of record on February 26, 2010, *before* they received notice of Defendant's Motion for Sanctions, not after as was suggested by Defendant in the Supplement to their motion." (Pls.' Resp. at 3, emphasis in original.) The response repeats that statement: "Ms. Hill did not become aware of the Order until Defendant filed its Motion for Sanctions on February 26, 2010, *after* the responses to discovery requests had already been completed and sent out to all counsel of record." (*Id*. at 5, emphasis in original.)

## LEGAL STANDARD

Fed. R. Civ. P. 37(b)(2) provides, in relevant part:

(A) If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:

    (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii) striking pleadings in whole or in part;

    (iv)    staying further proceedings until the order is obeyed;

    (v)    dismissing the action or proceeding in whole or in part;

    (vi)    rendering a default judgment against the disobedient party; or

    (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

\* \* \* \* \*

(C)    *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

## DISCUSSION

1.    <u>The Webbs failed to comply with the February 18 order</u>.

Although the Webbs' counsel expressed shock and outrage at receiving a motion for sanctions, the indisputable fact is that the Webbs did not obey the February 18 order to serve discovery responses by February 19 – and they have not obeyed it yet. That order was based on the Webbs' own promise to serve their admittedly "tardy" responses to discovery (which had been due in December 2009) "no later than February 18, 2010." Indeed, as of February 26, when the motion for sanctions was filed, the Webbs still had not served the discovery responses. Mr. De Rose's description of his conversation with Ms. Hill at 3:30 p.m. on February 26, *after* receiving the motion for sanctions, is very credible. The representations in the Webbs' response to the motion – that their

6

discovery responses were served before receiving the motion for sanctions – are not credible.[3]

Even more compelling is the fact that the responses the Webbs ultimately served are incomplete. CBS's Requests for Production of Documents has 29 requests. (Sher Decl. Supp. Def.'s Mot. ("Sher Decl."), Ex. A.) [Dkt 52.] The Webbs responded to only nine of them. (Def.'s Suppl. Mem., Ex. A.) The Webbs tender no explanation for their failure to respond to the other 20. Clearly, the Webbs failed to comply with the February 18 order.

Because the Webbs have sworn under oath that they have no documents responsive to any of CBS's document requests, there apparently are no documents for them to produce, but CBS is nonetheless entitled to a formal response. The Webbs must serve full and complete responses to CBS's requests 10 through 29 no later than June 2, 2010. Any objections to those requests have been waived because the Webbs have failed to assert any objection in a timely manner.

2.  CBS's motion for sanctions is granted.

Under Rule 37(b)(2)(C) quoted above, the court "must" order the disobedient party (or its attorney or both) to pay the moving party's reasonable expenses caused by the failure to comply, unless the failure was "substantially justified" or there are other circumstances making an award unjust. "The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b) advisory committee's note (1970 amend.).

The Webbs argue only that their failure to comply was negligent, not willful: that the

---

[3] Consistent with Mr. De Rose's verbatim recounting of the events, the responses that Ms. Hill mailed to CBS's counsel came with a cover letter saying that the originals had been sent to the clients for signature. (Def.'s Suppl. Mem., Ex. A.)

attorney responsible for the responses was unaware of the order because she had not filed an appearance, and the lawyer with an appearance on file does not check the notices sent by the court through the electronic filing system.

Negligence is not a justification. The Webbs have failed to demonstrate that an award to CBS would be unjust. The February 18 order embodied and extended the Webbs' counsel's own commitment that their already-late responses would be served by February 18. Even if the Webbs' attorneys were unaware of the order, the responses would have been served before February 19 – if they had kept their own promise. They offer no explanation why their commitment was not kept.

Furthermore, the Webbs' counsel's failure to keep informed of court orders transmitted via the electronic filing system is not a light or trivial matter. "Virtually every federal court today operates a comprehensive case management system that allows it to maintain electronic case files and offer electronic filing over the Internet. It is incumbent that attorneys litigating in federal courts learn the essentials of e-filing." *Vince v. Rock Co., Wisc.*, — F. 3d —, 2010 WL 1740771 at *2 (7th Cir. 2010). A party whose lawyer does not bother to learn what orders have been entered in a case should pay the expenses incurred by the party who moves to enforce the order.

Finally, as noted above, the Webbs tender no justification or explanation for failing to provide any response to 20 of the 29 document requests.

Accordingly, CBS is awarded its reasonable attorneys' fees and costs incurred in preparing and filing the motion for sanctions and the supplemental memorandum, and in appearing to present the motion on March 5, 2010. The parties shall follow the procedure set out in Local Rule 54.3(d) and (e) to determine the amount to be paid by the Webbs to CBS. If no agreement can be reached, CBS may file a motion pursuant to Local Rule 54.3(f) or (g).

3. <u>The Webbs must show cause why they should not be barred from presenting evidence of any economic damages</u>.

More troubling than the Webbs' delay in serving their discovery responses is what they have said and done in response to the requests and the present motion. The Webbs have not produced a single document in response to any of CBS's requests. Furthermore, in their affidavits quoted above, the Webbs state, under oath, that they read each of CBS's interrogatories and document requests "thoroughly" and understood them.[4] Significantly, both of the Webbs swore that they "considered each [document] request and did a full search," and each swore "*I was not and am not in possession or control of any of the documents requested*." (Webb Affs. ¶¶ 3-4, emphasis added.)

The Webbs' complaint alleges that as a result of the defendants' actions, "Plaintiffs have suffered and continue to suffer extreme mental anguish, extreme suffering, severe emotional distress and *ongoing medical bills*." (Am. Compl. ¶¶ 54, 59, emphasis added.) An identical allegation – likewise alleging "ongoing medical bills" – appeared in the original complaint filed by the Webbs in October 2008. (Comp. ¶ 75.) [Dkt 1-1.] In their answers to CBS's interrogatories, the Webbs state that Jill Webb has "most recently" seen a medical provider, Shelly Else, PA-C, "for prescription medication for anxiety issues relating to [her] sister-in-law missing and for the increased anxiety the videotaping as alleged in the Complaint has caused her." (Def.'s Suppl. Mem., Ex. A at 7.) The Webbs also state that they have talked to a counselor about the stress caused by the videotaping. (*Id*.)

CBS's document requests seek, *inter alia*, any documents relating to damages, including the

---

[4] The Webbs' statement that they "understood each" of the document requests and interrogatories is a bit surprising, given that the interrogatories and requests are preceded by five pages of instructions and definitions. (Sher Decl., Ex. A at 1-5.)

9

"ongoing medical bills," and any documents, including bills, statements, reports or notes, relating to treatment. (Sher Decl., Ex. A at 7.) Notwithstanding the Webbs' claim, made as early as 2008, that they incurred "ongoing medical bills," and their assertion that Jill Webb has taken prescription medication to deal with the anxiety caused by the videotaping, the Webbs have now sworn that they do not have and have never had any of the documents sought in the requests.[5]

When asked at the hearing about the fact that the Webbs swear they have no documents relating to their medical treatment, the Webbs' counsel brushed off any concern, responding that CBS could subpoena the Webbs' medical providers to get the documents. That ignores the fact that the Webbs as parties – indeed, as plaintiffs – have an independent obligation to preserve documents relating to their claim, and not just those documents that they intend to use to support their claim. They cannot simply piggyback on CBS's discovery efforts.

A district court recently expressed the basic obligation of parties to preserve and produce documents relating to a claim, and the consequences that flow from a failure to observe that obligation:

> Courts cannot and do not expect that any party can meet a standard of perfection. Nonetheless, the courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party. . . . [W]hen this does not happen, the integrity of the judicial process is harmed and the courts are required to fashion a remedy. . . . By now, it should be abundantly clear that the duty to preserve means what it says and that a failure to preserve records – paper or electronic – and to search in the right places for those records, will inevitably result in the spoliation of evidence.

*Pension Comm. of the U. of Montreal Pen. Plan, et al. v. Banc of Am. Sec., LLC,* — F. Supp. 2d. —,

---

[5] Under the Federal Rules, a request to produce documents may include e-mail and other electronically stored information. Fed. R. Civ. P. 34(a)(1)(A).

No. 05 Civ. 9016(SAS), 2010 WL 184312 at *1 (S.D.N.Y. Jan. 15, 2010).

The Webbs' affidavits, sworn under oath, lead to only a few possibilities: (a) that the Webbs' allegation that they incurred "ongoing medical bills" is false; (b) that the allegation is true but that the Webbs have *throughout the course of this litigation* failed to preserve documentation, including those bills; or (c) that the affidavits submitted by the Webbs are false. Any of those possibilities is a serious matter.

After careful consideration because of the seriousness of the issue, the court has decided to deny without prejudice CBS's request that the Webbs be barred from presenting any evidence beyond documents and testimony identified by CBS. Instead, the Webbs must show cause why the sanction authorized by Rule 37(b)(2)(A)(ii) (that is, that the Webbs be barred from presenting any evidence that they incurred any economic or monetary damages, including any evidence of bills for, or payment of, medical treatment) should not be ordered. No later than June 9, 2010, the Webbs shall file a memorandum and any supporting factual material showing why that sanction should not be ordered.

**CONCLUSION**

For the foregoing reasons, defendant CBS Broadcasting, Inc.'s Motion for Sanctions [dkt 50] is granted in part and denied in part without prejudice as follows:

1) No later than June 2, 2010, the Webbs shall serve a formal response to CBS's document requests 10 through 29;

2) CBS is awarded its reasonable attorneys' fees and costs incurred in preparing and filing the motion for sanctions and the supplemental memorandum, and in appearing to present the motion

on March 5, 2010. The parties shall follow the procedure set out in Local Rule 54.3(d) and (e) to determine the amount to be paid by the Webbs to CBS.  If no agreement can be reached, CBS may file a motion pursuant to Local Rule 54.3(f) or (g); and

3) CBS's request that the Webbs be barred from presenting any evidence beyond that presented by CBS is denied without prejudice; instead, the Webbs shall, no later than June 9, 2010, file a memorandum of law along with any supporting factual material to show cause why they should not be barred from presenting any evidence that they incurred any economic or monetary damages, including any evidence of bills for, or payment of, medical treatment.

**IT IS SO ORDERED.**

_____
Geraldine Soat Brown
United States Magistrate Judge

May 25, 2010