IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JILL and ROBERT WEBB, in their own )
proper persons, and as parents and next )
friends of their minor children, )
 )
              Plaintiffs, )
 )
      v. )   Case No. 08 C 6241
 )
CBS BROADCASTING, INC., et al., )
 )
             Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their First Amended Complaint, Plaintiffs Jill and Robert Webb, on their own and as parents and next friends of their minor children, filed the present lawsuit against Defendants CBS Broadcasting, Inc. ("CBS") and Tracy Reardon, an individual, alleging common law claims of intrusion upon seclusion (Count I) and intentional infliction of emotional distress (Count II) based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Since January 26, 2010, Magistrate Judge Brown has supervised discovery in this matter and has ruled on numerous discovery motions. On October 29, 2010, the Executive Committee for the United States District Court for the Northern District of Illinois reassigned this lawsuit to the Court based on Judge Andersen's retirement from the bench. Before the Court are Plaintiffs' motions to reconsider two of Judge Brown's discovery rulings dated February 3, 2011 and February 17, 2011 pursuant to Federal Rule of Civil Procedure 72(a). For the following reasons, the Court denies Plaintiffs' motions for reconsideration.

**BACKGROUND**

In their First Amended Complaint, Plaintiffs allege that in late June and early July 2007 there was extensive media coverage of "the Lisa Stebic case" because Lisa Stebic had mysteriously disappeared from her home on April 30, 2007. (R. 30, First Am. Compl. ¶ 9.) Plaintiffs further allege that Lisa Stebic was married to Craig Stebic and that the couple was in the process of divorcing at the time of her disappearance. (*Id.* ¶¶ 10, 11.) Plaintiff Jill Webb is the sister of Craig Stebic. (*Id.* ¶ 12.)

Plaintiffs further allege that the National Broadcast Company ("NBC") and NBC 5 News assigned Amy Jacobson to investigate and report on the Lisa Stebic case. (*Id.* ¶ 13.) Plaintiffs Jill and Robert Webb allege that they quickly established a rapport with Jacobson and that Jacobson became a reporter that both families trusted because of her tireless efforts to find out what happened to Lisa Stebic. (*Id.* ¶¶ 14, 15.) Plaintiffs allege that a reporter with Defendant CBS, Michael Puccinelli, who is no longer a named Defendant to this lawsuit, had alienated Craig Stebic and Lisa Stebic's family and that they did not trust him. (*Id.* ¶ 16.) Plaintiffs further allege that Puccinelli aired a story on July 5, 2007 on CBS that recklessly and incorrectly named Craig Stebic as "a person of interest" in the investigation of his wife's disappearance. (*Id.* ¶ 18.) Indeed, it was not until July 14, 2007 that the authorities named Craig Stebic as "a person of interest" in the investigation of his wife's disappearance. (*Id.* ¶ 19.)

On July 6, 2007, Plaintiffs and Craig Stebic invited Jacobson to Stebic's house to discuss the case. (*Id.* ¶ 21.) Plaintiffs allege that Jacobson had visited the Stebic home on prior occasions to discuss the case. (*Id.* ¶ 22.) Further, Plaintiffs assert that at no time did Plaintiffs Jill and Robert Webb or Craig Stebic represent that their meeting was going to be an "adult pool

party" or in any way portray the purpose of the meeting as being "social." (*Id*. ¶ 23.) Also, Plaintiffs allege that Puccinelli had never received a similar invitation to the Stebic household because the family did not trust him. (*Id*. ¶ 24.)

Meanwhile, Plaintiffs maintain that CBS received a tip from Defendant Tracy Reardon that Jacobson was at the Stebic house in the backyard with her children. (*Id*. ¶ 25.) Plaintiffs also allege that Reardon began shooting a videotape of Plaintiffs, their minor children, Craig Stebic, and Jacobson and her minor children in the Stebic's backyard. (*Id*. ¶¶ 26, 37.) Plaintiffs contend that the Stebic's backyard was only visible through a telephoto lens from the upstairs bedroom window of Reardon's home, which was presumably near the Stebic home. (*Id*. ¶ 39.) Plaintiffs also maintain that the video footage showing Plaintiffs, their minor children, Craig Stebic, Jacobson and her minor children inside the patio door of the Stebic house, in the backyard, or near the swimming pool could not have been taken by or in any area accessible to the public because the Stebic property was surrounded by a privacy fence. (*Id*. ¶ 33.) Moreover, Plaintiffs assert that no one authorized the videotaping. (*Id*. ¶¶ 34, 45.)

Thereafter, Puccinelli and his CBS cameraman went to the home of Reardon and she gave them the videotape. (*Id*. ¶ 35.) On July 10, 2007, the local CBS station aired an edited version of the videotape. (*Id*. ¶ 39.) Plaintiffs assert that the accompanying news story recklessly suggested that Jacobson had made a social visit to the Stebic household and implied that Craig Stebic and Jacobson were having an affair and that Plaintiffs condoned the affair. (*Id*. ¶¶ 40, 41.) Plaintiffs also allege that CBS placed raw footage of the videotape on the Internet and on CBS's homepage. (*Id*. ¶¶ 42, 43.)

Amy Jacobson filed a separate lawsuit against CBS based on the July 2007 videotape and

3

its publication, which is presently in the Circuit Court of Cook County, Illinois. *See Jacobson v. CBS Broadcasting, Inc.,* No. 2008-L-007331 ("*Jacobson* case").

## LEGAL STANDARD

A "district court's review of any discovery-related decisions made by the magistrate judge is governed by Rule 72(a) of the Federal Rules of Civil Procedure." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997). Under Federal Rule of Civil Procedure 72(a), a district judge may set aside a magistrate judge's ruling on a non-dispositive motion if the order is clearly erroneous or contrary to law. *See id.*; *see also Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 760 (7th Cir. 2009). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks,* 126 F.3d at 943; *see also Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In general, under the clearly erroneous standard, if there are two permissible views of the facts, a district court's choice between them cannot be clearly erroneous. *See Anderson,* 470 U.S. at 574; *Dexia Credit Local v. Rogan,* 629 F.3d 612, 628 (7th Cir. 2010).

## ANALYSIS

At some point prior to Plaintiffs' counsel taking four depositions of CBS employees in August 2010, Plaintiffs' counsel came into possession of certain documents that CBS had produced to the plaintiff in the *Jacobson* case (hereinafter *"Jacobson* documents"). (R. 179, 1/13/11, Mem., Op., & Order, at 4.) These documents were marked "confidential" and were Bates-stamped with "CBS 2 Jacobson" followed by numbers 1 through 443. (*Id.*) The documents, which included e-mails, memoranda, and handwritten notes, were subject to a

4

protective order in the *Jacobson* state court case. (*Id*.) In a January 13, 2011, Memorandum, Opinion, and Order, Judge Brown concluded that Plaintiffs' counsel had obtained the *Jacobson* documents in violation of the protective order filed in the *Jacobson* case. (*Id.* at 11, 19-20.) Judge Brown then conducted an *in camera* review of the 443 documents to determine whether any of these documents were within the scope of discovery in the present matter. (*Id*. at 20.) After Judge Brown reviewed the *Jacobson* documents *in camera*, she directed CBS to produce two pages of handwritten notes and to "un-redact" a sentence of an e-mail because these documents "could be construed to lie within the outer limits of discoverable information responsive to plaintiffs' first request for production fo documents and tangible things." (R. 187, 2/3/11, Minute Order, at 1.) Plaintiffs now seek reconsideration of Judge Brown's February 3, 2011, Minute Order.

Meanwhile, after Judge Brown issued the February 3, 2011, Minute Order, CBS learned that Plaintiffs' counsel had retained the 443 documents that were obtained in violation of the protective order in the *Jacobson* case. CBS then filed a motion for the return of the *Jacobson* documents except for the two pages CBS produced pursuant to Judge Brown's February 3, 2011, Minute Order. On February 17, 2011, Judge Brown granted CBS's motion and ordered Plaintiffs to return all copies of the *Jacobson* documents. Instead of returning the *Jacobson* documents, Plaintiffs filed the present motion to reconsider Judge Brown's February 17, 2011, minute entry granting CBS's motion for the return of the documents.

**I.      Minute Order of February 3, 2011**

On May 7, 2009, Judge Anderson granted in part and denied in part CBS's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) concluding that

5

because the allegations and damages relating to CBS's publication of the videotape were time-barred, the only remaining claims in this lawsuit pertain to the actual videotaping itself. (R. 29.) In fact, Plaintiffs admitted that their claims based on the publication of the videotape were time-barred. After CBS moved to dismiss Plaintiffs' First Amended Complaint filed on June 12, 2009, Judge Anderson denied the motion, but noted that the additional factual allegations of the videotape's publication simply provided context. (R. 42.) Thus, Plaintiffs' claims are very narrow relative to the *Jacobson* case because the videotape's publication is no longer at issue in this lawsuit. As such, the decision to videotape, the process of videotaping, and Plaintiffs' damages from the act of videotaping are relevant to the present lawsuit. (R. 179.) On the other hand, the decision to broadcast, edit the videotape, and the results of the broadcast are not relevant to this lawsuit. (*See id*.)

As Judge Brown explained in the January 13, 2011, Memorandum, Opinion, and Order discussing the *Jacobson* documents:

> It is not surprising that documents were produced in the *Jacobson* case that were not produced in this case, for the very reason identified by CBS: the *Jacobson* case involves claims that this case does not. CBS agreed to produce for deposition the individuals who were dismissed from this case and agreed to "seek to schedule depositions in conjunction with the *Jacobson* case so that the overlapping witnesses need not sit for two depositions." (Jt. Status Rpt. ¶ 5.) But the Webbs do not point to any agreement that discovery or document production here would be co-extensive with the *Jacobson* case.

(*Id*. at 18.)

In their motion to reconsider Judge Brown's February 3, 2011, Minute Order, Plaintiffs argue that there are *Jacobson* documents that Judge Brown did not order to be produced after her *in camera* inspection concerning the July 2007 videotaping that are relevant to the case. After reviewing these documents, *in camera*, the Court agrees with Judge Brown that they are not

6

within the scope of discovery in this matter. To clarify, these documents involve the editing of the videotape, Amy Jacobson's appearance on the videotape, another Chicago reporter's coverage of the story, viewers' complaints and e-mails of CBS's coverage of the story, the drafting of the scripts for the various news reports, how the raw video generated traffic on the CBS website, and unsolicited viewer e-mails about the legality and ethics of the videotaping. In short, these documents do not pertain to the decision to videotape, the process of videotaping, and Plaintiffs' damages from the act of videotaping.

Moreover, Plaintiffs fail to give a cogent reason why Judge Brown's findings in the February 3, 2011, Minute Order were clearly erroneous. Indeed, Judge Brown's discovery rulings in this matter, including her *in camera* review of the *Jacobson* documents and the resulting February 3, 2011, Minute Order, reflect a thorough, considered approach and sound reasoning. As such, the Court would be hard-pressed to conclude that Judge Brown's findings were clearly erroneous. *See Weeks,* 126 F.3d at 943. In other words, the Court does not have a definite and firm conviction that Judge Brown made a mistake. *See id.* Therefore, the Court denies Plaintiffs' motion as to the February 3, 2011, Minute Order.

## II.    Minute Entry of February 17, 2011

Next, Plaintiffs move to reconsider a portion of Judge Brown's Minute Entry of February 17, 2011, which states:

> No later than 2/18/11 at 4:00 p.m. plaintiffs, their counsel, their agents and anyone acting on their behalf shall return to CBS' counsel all copies of the Jacobson documents in their possession, custody or control, except for the 2 documents specifically identified in this Court's order of 2/3/11.

(R. 196.) Plaintiffs argue that because their counsel came into possession of the *Jacobson*

7

documents honestly and without any violation of a court order, they should be able to retain the *Jacobson* documents.[1]

Regardless of counsel's professed honest intentions, the *Jacobson* documents are subject to a protective order in the *Jacobson* case in the Circuit Court of Cook County and Plaintiffs' possession of these documents is in violation of that order. (*See* R. 179, 1/13/11, Mem., Op., & Order, at 11, 19-20. Meanwhile, Plaintiffs have failed to establish that Judge Brown's February 17, 2011 ruling is clearly erroneous or contrary to law, and thus Plaintiffs are not entitled to keep the *Jacobson* documents. *See Weeks,* 126 F.3d at 943; *see also Sommerfield v. City of Chicago,* 252 F.R.D. 407, 409 (N.D. Ill. 2008) (party seeking to overturn discovery ruling bears a heavy burden). The Court therefore denies Plaintiffs' motion to reconsider the February 17, 2011, Minute Entry.

## CONCLUSION

For these reasons, the Court denies Plaintiffs' motions to reconsider Magistrate Judge Brown's orders dated February 3, 2011 and February 17, 2011 brought pursuant to Federal Rule of Civil Procedure 72(a).

**Dated:** March 8, 2011

                                          **ENTERED**

                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**

---

[1] Plaintiffs also argue that to the extent that the February 17, 2011 order appears to be rescinding Judge Brown's prior order granting counsel two hours to depose Nathan Lack, the Court should also reconsider this ruling. If Plaintiffs have any uncertainty about this ruling, however, they must first file a motion to clarify with Judge Brown.