**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JILL and ROBERT WEBB, in their own proper persons, and as parents and next friends of their minor children, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 6241 |
| v. | ) ) | |
| CBS BROADCASTING, INC., a foreign corporation, and TRACY REARDON,[1] | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their First Amended Complaint, Plaintiffs Jill and Robert Webb, on their own and as parents and next friends of their minor children, allege Illinois common law claims of intrusion upon seclusion (Count I) and intentional infliction of emotional distress (Count II) against Defendant CBS Broadcasting, Inc. ("CBS") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Prior to Plaintiffs filing the First Amended Complaint, Judge Wayne Andersen, the then-presiding judge, granted in part and denied in part CBS's Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings on May 7, 2009.[2] On July 8, 2011, CBS filed the present motion for summary judgment pursuant to Rule 56(b). For the following reasons, the Court grants CBS's motion and dismisses this lawsuit in its entirety.

---

[1] On November 12, 2010, the Court granted the parties' stipulation and agreed order dismissing Tracy Reardon as a Defendant from this lawsuit.

[2] Due to Judge Andersen's retirement from the bench, the Executive Committee for the United States District Court for the Northern District of Illinois reassigned this matter to the Court on October 29, 2010.

## BACKGROUND

I.   **Northern District of Illinois Local Rule 56.1**

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture").

Local Rule 56.1(a)(3) specifically requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th

Cir. 2008).

Accordingly, pursuant to the Local Rules, the Court will not consider any additional facts proposed in the Webbs' Local Rule 56.1(b)(3)(B) Response, but instead must rely on their Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 ***requires specifically*** that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'") (emphasis in original). Also, many of the Webbs' responses "do not fairly meet the substance of the material facts asserted," and therefore, do not satisfy the requirements of Local Rule 56.1(b)(3)(B). *See Bordelon,* 233 F.3d at 528; *see also* Fed.R.Civ.P. 56(e)(2). These insufficient responses include ¶¶ 30, 31, 32, 37, 38, 39, 40, 44, and 45. (*See* R. 275, Pls.' Resp. to Def.'s Stmt. Facts.)

## II. Relevant Facts

Plaintiffs Jill and Robert Webb, who are citizens of Iowa, were present with their minor children at the Plainfield, Illinois home of Jill Webb's brother, Craig Stebic, on the day of the events giving rise to this lawsuit – July 6, 2007. (R. 250, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) CBS is a corporation that owns and operates Chicago television station WBBM. (*Id*. ¶ 2.) Tracy Reardon is Craig Stebic's neighbor. (*Id*. ¶ 3.)

Craig Stebic and his wife, Lisa Stebic, were divorcing when Lisa disappeared from their Plainfield home on April 30, 2007. (*Id*. ¶ 6.) Lisa Stebic's disappearance and the investigation of her disappearance were the focus of wide-spread public attention. (*Id*. ¶ 7.) At some point in July 2007, local police authorities named Craig Stebic as a person of interest in their

3

investigation of his wife's disappearance. (*Id*. ¶ 8.) Prior to July 6, 2007, law enforcement authorities closely monitored the Stebics' house by placing two video cameras on utility poles that focused on the Stebics' house and backyard and recorded activities in that area. (*Id*. ¶¶ 10, 45.)

Also prior to July 6, 2007, numerous news organizations dispatched reporters and videographers to the Stebics' home to record activities taking place there. (*Id*. ¶ 11.) One such reporter, who worked for Chicago's NBC station WMAQ, Amy Jacobson, personally made efforts to find out what happened to Lisa Stebic and quickly established a rapport with Jill and Robert Webb. (*Id*. ¶¶ 13, 14.) Indeed, prior to July 6, 2007, Jacobson had spoken with Craig Stebic and Jill Webb and had been to the Stebics' home. (*Id*. ¶ 14.) Jill Webb and Craig Stebic together telephoned Jacobson and invited her to visit the Stebics' home on Friday, July 6, 2007. (*Id*. ¶ 15.) Jacobson, who testified that she had otherwise planned to take her children to a community swimming club the morning of July 6, 2007, instead took her children to the Stebics' house, where she and her children, the Webbs and their children, and Craig Stebic proceeded to interact in and around the swimming pool in the Stebics' backyard. (*Id*. ¶ 16.) Jill Webb invited Jacobson to the Stebics' house for professional reasons, namely, the Webbs and Craig Stebic wanted to discuss Lisa Stebic's disappearance and Jacobson's investigation into it. (*Id*. ¶ 17.) Jacobson accepted their invitation and visited the Stebics' house in her capacity as a television news reporter covering the story. (*Id*.)

A community search for Lisa Stebic was planned for July 7, 2007. (*Id*. ¶ 20.) On July 6, 2007, Michael Puccinelli, a CBS reporter at Chicago television station WBBM, was assigned to prepare a news report on the July 7, 2007 search. (*Id*. ¶¶ 21, 22.) In the morning of July 6, 2007,

4

Nathan DeLack, a CBS employee and videographer at WBBM, drove Puccinelli to Plainfield. (*Id*. ¶ 24.) Upon arriving in Plainfield, Puccinelli – who hoped to interview a Stebic family member about the next day's community search for Lisa Stebic – rang the bell at the Stebics' front door, but Robert Webb told him that the family did not wish to speak to him. (*Id.* ¶ 25.)

After Robert Webb turned Puccinelli away from the Stebic house, DeLack and Puccinelli drove around the corner to the home occupied by Reardon and William Alstrom, to whom Puccinelli had previously spoken. (*Id*. ¶ 36.) Alstrom invited Puccinelli into the house to talk. (*Id*. ¶ 37.) Puccinelli testified that from Reardon's home, he could see that people were gathered in the Stebics' backyard. (*Id*.) Puccinelli further testified that he was surprised to see that Craig Stebic had guests at his house the day before the search for his wife. (*Id*. ¶ 38.)

Thereafter, Puccinelli asked DeLack to videotape the events in the Stebics' backyard because he thought the events were newsworthy. (*Id*. ¶ 39.) Alstrom then gave DeLack and Puccinelli permission to bring the video camera – which had a zoom function – into the Alstrom/Reardon home and to set up the camera in front of one of the kitchen windows on the first floor. (*Id*. ¶¶ 40, 41.) In the subsequent videotape, Craig Stebic, Jacobson, the Webbs, and the children are seen around the Stebics' swimming pool, as well as passing through a sliding glass door between the house and the pool deck. (*Id*. ¶ 42.) CBS aired an edited version of the videotape on a CBS broadcast on July 10, 2007.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

5

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

### I.     Intrusion Upon Seclusion Claim – Count I

Judge Andersen's ruling on CBS's Rule 12(c) motion is relevant to the Court's determination of Plaintiffs' common law claim of intrusion upon seclusion. *See HK Sys., Inc. v. Eaton Corp.,* 553 F.3d 1086, 1089 (7th Cir. 2009) ("The doctrine of law of the case counsels against a judge's changing an earlier ruling that he made in the same case"). That being said, Judge Andersen's decision on the pleadings is not a definitive "ruling" on the matter, as Plaintiffs argue, because Judge Andersen applied the law to the facts as alleged in a light most favorable to Plaintiffs – as required by Rule 12(c). *See Finch v. Peterson,* 622 F.3d 725, 728 (7th Cir. 2010). At this procedural posture, however, Plaintiffs must establish that there is a genuine dispute as to any material fact based on admissible evidence in the record. *See Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009).

As Judge Andersen's May 7, 2009 Memorandum, Opinion, and Order explains,

Plaintiffs' intrusion upon seclusion claim is limited to the act of the videotaping itself, and not the subsequent publication, namely, the July 10, 2007 broadcast on CBS.[3] (R. 29, May 7, 2009, Mem., Op. & Order, at 4-5.) Under Illinois law, the common law claim of intrusion upon seclusion – which is a form of an invasion of privacy claim – includes the following elements: "(1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney v. Chicago Public Sch.,* 407 Ill.App.3d 358, 366, 347 Ill.Dec. 733, 943 N.E.2d 23 (1st Dist. 2010); *see also Busse v. Motorola, Inc.,* 351 Ill.App.3d 67, 71, 286 Ill.Dec. 320, 813 N.E.2d 1013 (1st Dist. 2004).

Under the first element, the Webbs must establish that when DeLack and Puccinelli videotaped them, they were in a place a reasonable person would believe to be secluded. *See Busse,* 351 Ill.App.3d at 71; *Webb v. CBS Broad. Inc.,* No. 08 C 6241, 2009 WL 1285836, at *3 (N.D. Ill. May 7, 2009); *see also Acosta v. Scott Labor, LLC,* 377 F.Supp.2d 647, 650 (N.D. Ill. 2005). The third element of an intrusion upon seclusion claim requires that Plaintiffs "attempted to keep private facts private." *See Acosta,* 377 F.Supp.2d at 650. In other words, "persons cannot reasonably maintain an expectation of privacy in that which they display openly." *Id.* (citation omitted); *see also Carroll v. Lynch,* No. 07 C 1575, 2011 WL 1838563, at *23 (N.D. Ill. May 13, 2011) ("Two prerequisites of an intrusion upon seclusion claim are an allegation that the prying included 'private facts,' such as details of a person's financial, medical or sexual life, and that the Plaintiff has "attempted to keep private facts private.") (citation omitted).

---

[3] Many of Plaintiffs' Rule 56.1 Statement of Facts concern the publication of the videotape – facts that are immaterial to the Court's determination of Plaintiffs' intrusion upon seclusion claim. (*See* R. 276, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 3, 12-20, 26, and 33.)

7

Although it is undisputed that the Webbs did not consent to having their conduct videotaped on July 6, 2007, uncontested evidence in the record establishes that their activities at the Stebics' swimming pool and backyard were in plain view, and thus not secluded. To clarify, the rear of the Stebics' backyard adjoins an open, grassy area through which members of the public walk to reach a pond that is within the block on which the Stebics' house is located. (Defs.' Stmt. Facts ¶ 27). And, although the Stebics built a fence around their pool as required by a local safety ordinance, because the fence sits at the bottom of a hill and the pool deck is higher than the base of the fence, it is undisputed that the majority of the Stebics' backyard is visible to the naked eye from the first-floor windows of the Reardon/Alstrom house. (*Id*. ¶¶ 31, 37.) Indeed, a licensed professional land surveyor surveyed the Stebics' property and surrounding area and concluded that the Reardon/Alstrom house and yard, as well as portions of the public street, sidewalk, and grassy area, all sit atop a hill that rises three to five feet above the Stebics' backyard. (*Id*. ¶¶ 29, 30; Eck Decl. ¶ 15.)[4] Further, there is undisputed evidence in the record that the videotape made by DeLack from the Reardon/Alstrom kitchen window could have been made from the public sidewalk or public street because the Stebics' backyard was visible to the public from many vantage points. (*Id*. ¶ 44.) *Cf. United States v. Conrad,* 578

---

[4] The only evidence Plaintiffs present to refute the professional land surveyor's results are photographs without a sufficient supporting affidavit. *See Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 496 (7th Cir. 2006) (documents must be authenticated by affidavit and affiant must be person through whom exhibits could be admitted into evidence); Fed.R.Civ.P. 56(c)(4); *see also Gunville,* 583 F.3d at 985 ("court may consider only admissible evidence in assessing a motion for summary judgment"). Even if these photographs were admissible evidence, however, the photographs and supporting affidavit do not refute the professional land surveyor's results because they do not reflect the physical measurements of the yard, fence, and surrounding areas. In fact, the affiant explains that she did not take any measurements of the backyard or surrounding areas when she took these photographs. (R. 281-2, C. DeRose Aff. ¶ 3.)

F.Supp.2d 1016, 1029 (N.D. Ill. 2008) ("Fourth Amendment does not prohibit a police officer's naked eye observations made of a constitutionally protected area from the vantage point of a public place"). Meanwhile, although DeLack used a zoom lens in videotaping the Stebics' backyard, when objects are in plain view, there is no legitimate expectation of privacy. *See Acosta,* 377 F.Supp.2d at 650-51.

Thus, viewing the facts and all reasonable inferences in Plaintiffs' favor, they have failed to establish a genuine dispute as to any material fact regarding the first and third elements of a common law intrusion upon seclusion claim because their activities at the Stebics' swimming pool and backyard were in plain view, the Webbs' conduct was openly displayed, and a passerby on the street or in the grassy area behind Stebics' yard could observe what DeLack and Puccinelli saw. *See Schiller v. Mitchell,* 357 Ill.App.3d 435, 441, 293 Ill.Dec. 353, 828 N.E.2d 323 (2d Dist. 2005) (plaintiff "does not explain why a passerby on the street or a roofer or a tree trimmer could not see what the camera saw, only from a different angle"). Because the elements of a claim for intrusion on seclusion are cumulative, the Court need not discuss whether the intrusion would be highly offensive to a reasonable person or if the intrusion caused the Webbs anguish and suffering. *See Busse,* 351 Ill.App.3d at 71-72. Accordingly, the Court grants CBS's summary judgment motion as to Count I of the First Amended Complaint.

## II. Intentional Infliction of Emotional Distress

Plaintiffs also bring a common law intentional infliction of emotional distress ("IIED") claim. To prove an IIED claim under Illinois law, a plaintiff must establish that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact

9

caused severe emotional distress." *Swearnigen–El v. Cook County Sheriff's Dep't,* 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El,* 602 F.3d at 864 (quoting *Kolegas,* 154 Ill.2d at 21); *see also Fox v. Hayes,* 600 F.3d 819, 842 (7th Cir. 2010). Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct. *See Kolegas,* 154 Ill.2d at 20-21. Moreover, the Webbs must establish that their distress was "so severe that no reasonable man could be expected to endure it." *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 276, 278 Ill.Dec. 263, 798 N.E.2d 75 (Ill. 2003).

Although Plaintiffs set forth evidence that Jill Webb contacted CBS explaining that she was upset about the broadcast of the videotape, Plaintiffs have failed to present any evidence that CBS's conduct in videotaping them in Craig Stebic's backyard caused them distress that was so severe that no reasonable person could expect to endure it. *See id.* Also, even though Puccinelli's and DeLack's conduct in videotaping Craig Stebic and his guests at the Stebics' pool was unwelcome, this conduct is not so outrageous that it goes beyond all possible bounds of decency, especially in light of the fact that the police had the Stebic house and backyard under 24-hour video surveillance, as well. (Def.'s Stmt. Facts ¶ 10, 45.) Last, Plaintiffs must establish that DeLack and Puccinelli intended to inflict severe emotional distress or knew that there was a high probability that their conduct would cause the Webbs severe emotional distress. *See Schiller,* 357 Ill.App. 3d at 447. Here, facts in the record clearly establish that Puccinelli and DeLack videotaped the Stebics' backyard because Amy Jacobson and Craig Stebic were there,

10

not because the Webbs and their children were in the backyard. (Def.'s Stmt. Facts ¶ 39.) The Court thus grants CBS's summary judgment motion as to Count II of the First Amended Complaint.

## CONCLUSION

For the these reasons, the Court grants Defendant's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(b) and dismisses this lawsuit in its entirety.

**Date:** September 13, 2011

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**