UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILL and ROBERT WEBB in their own proper persons, and as parents and next friends of their minor children, | |
| Plaintiffs, | Case No. 08 C 6241 |
| v. | Judge Amy J. St. Eve |
| | Magistrate Judge Geraldine Soat Brown |
| CBS BROADCASTING, INC., a foreign Corporation, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

This matter is before the court on defendant CBS Broadcasting Inc.'s ("CBS") motion for attorneys' fees and costs to determine the appropriate amount of sanctions previously ordered. (Def.'s Mot.) [Dkt 239.] CBS seeks a total sanction amount of $79,336.10. (*Id*. at 1.) For the reasons set forth below, CBS's motion is granted in part and denied in part, and plaintiffs Jill and Robert Webb ("the Webbs") and their counsel are sanctioned $76,529.04. The Webbs and their counsel are jointly and severally liable for that amount, and shall remit payment to CBS within 30 days of this order.

## Background

Sanctions were imposed against the Webbs and their counsel for the second time in this case due to their failure to comply with their discovery obligations under the Federal Rules of Civil Procedure, for providing misleading statements in depositions and false affidavits to the court about the existence of discoverable information, for the Webbs' counsel's active concealment of confidential CBS documents, and for violation of the court's order closing discovery. (Mem. Op. & Order, May 6, 2011.) [Dkt 238.] As a result of that misconduct, CBS was compelled to hire a computer forensics expert to examine the Webbs' personal computer and review the results, take additional depositions of the Webbs, and spend considerable time bringing motions to compel the return of confidential documents and for sanctions. Accordingly, the Webbs and their counsel were held jointly and severally liable to pay CBS: (1) the fees and costs charged by computer forensics expert James Murray in the amount of $3,241.25;[1] (2) the additional costs CBS incurred to resume the Webbs' depositions in the amount of $414.29;[2] and (3) the reasonable attorneys' fees and costs incurred by CBS in bringing and briefing the following: CBS's Renewed Motion for Sanctions; CBS's Motion to Compel Return of Confidential Documents and to Dismiss; and CBS's Supplemental Memorandum in support thereof, including CBS's response to the Webbs' Motions to Supplement their Reply to the Court's Query. (*Id.* at 33.)

---

[1] The Webbs were previously ordered to pay the cost of imaging the hard drive on their computer in the amount of $885.00. The remaining amount of $2,356.25 is the fee for conducting the search. (Mem. Op. & Order at 33 n. 16.)

[2] In connection with the resumed depositions, CBS sought only the hotel bill incurred for its out-of-town counsel to stay one additional night in Chicago. (Mem. Op. & Order at 33 n. 17.) Documentation of the hotel room charge of $414.29 was submitted in support of CBS's Renewed Motion for Sanctions. (Def.'s Ren. Mot. Sanctions, Suppl. Larsen Decl., Ex. P.) [Dkt 136.]

The court instructed CBS to calculate the amount of the third category and communicate it to the Webbs' counsel. (*Id.* at 33-34.) CBS thereafter sent a letter to plaintiffs' counsel, John DeRose, with a calculation of $79,336.07 as a total proposed sanction amount, which included the aforementioned $3,241.25 for fees charged by Mr. Murray, $414.29 for CBS's counsel's hotel bill necessitated by the additional depositions, and CBS's calculation of $75,187.10 in attorneys' fees and $493.46 in costs for bringing and responding to the various motions. (Def.'s Mem., Ex. A.) [Dkt 240.] The letter refers to an itemization of the hours worked and hourly fees charged by attorney and paralegal who worked on the motions. (*Id.*) CBS represented that the amount requested was in fact a reduction from the $86,813.06 CBS actually spent in attorneys' fees and costs. (*Id.*) CBS did not receive a response to its letter, and according to Mr. Levine, Mr. DeRose purportedly indicated he and his clients would not willingly pay any amount during a June 1, 2011 conversation with CBS counsel. (Def.'s Mem. Mot., Group Ex. B, Aff. Lee Levine ¶¶ 9-10.)

In support of its present motion and fee calculation, CBS has submitted affidavits from four attorneys and one paralegal who worked on the motions, reflecting the following breakdown of fees and costs: 36.1 hours for attorney Lee Levine at an hourly rate of $375 prior to January 1, 2011 and $390 thereafter; 108.4 hours for attorney Ashley I. Kissinger at an hourly rate of $350 prior to January 1, 2011 and $370 thereafter; 20.6 hours for attorney Brian A. Sher at an hourly rate of $435 prior to January 1, 2011 and $450 thereafter; 12.7 hours for attorney Katherine Larsen at an hourly rate of $280; and 43.3 hours for paralegal Marla D. Kelley at an hourly rate of $190 prior to January 1, 2011 and $195 thereafter; and $493.46 in travel expenses incurred by Mr. Levine in connection with appearing before the court on the motions. (Def.'s Mem., Group Ex. B.)

The Webbs have raised specific objections to most of the time CBS's attorneys spent on these

3

motions on the basis that it was duplicative, excessive, and/or unnecessary. (*See* Pls.' Resp.) [Dkt 244.] The Webbs also argue that the affidavits CBS's attorneys provided do not support their hourly rates because they do not describe their qualifications. (*Id.* at 2.) Finally, the Webbs request a hearing before the court for the following purposes: to be heard on the subject of whether sanctions should be imposed, to inquire of CBS's counsel about the hours charged and to voice objection that such claims are inappropriate, and "to explain to this Honorable Court the actions taken by them during discovery, their attempt to withhold nothing from the defense, their eager cooperation to join in the search for all relevant material, the unilateral obstruction of the discovery process by CBS, and the freedom from any contumacious conduct by plaintiffs and their attorney." (*Id.* at 12.)

## Discussion

The Webbs' last argument is addressed first: the Webbs have had ample opportunity to be heard on the subject of whether sanctions should be imposed and to object to CBS's calculations of those sanctions, and they will not be granted yet another opportunity to do so at this belated stage. When CBS filed its initial renewed motion for sanctions, the Webbs filed a response along with supporting affidavits from Jill Webb and the Webbs' counsel. [Dkt 156.] After CBS filed its later motion for dismissal as a sanction, the Webbs and their counsel knew what was potentially at stake: sanctions up to and including dismissal of the case. This court provided the Webbs with the opportunity to respond to that motion and explicitly instructed, "[P]laintiffs shall file a response to defendants' motion to dismiss showing cause why this Court should not recommend to the District Judge that this case be dismissed with prejudice as a sanction and why additional sanctions should not be imposed." (Order, Feb. 17, 2011.) [Dkt 196.] The Webbs did, in fact, file a response,

4

complete with supporting exhibits. [Dkt 202.] After CBS filed a supplement to its motion, the Webbs were again given the opportunity to respond, with the specific instruction, "Plaintiffs' response shall also include any argument plaintiffs have as to why the case should not be dismissed." (Order, March 24, 2011.) [Dkt 211.] The Webbs responded and were further granted leave to file supplements to that response on two occasions with additional briefing and supporting exhibits. [Dkt 213, 225, 231, 233.] At the conclusion of that extensive briefing, CBS' motions were granted in a lengthy opinion. (May 6, 2011 Opinion.)

The Webbs chose not to raise any objections to the May 6, 2011 Opinion to the District Judge within the time allotted under the Federal Rules. *See* Fed. R. Civ. P. 72(a). As for objections to the specific amount of sanctions at issue in the present motion, the Webbs were again given the opportunity to object, and they did. (Order, June 10, 2011; Pls.' Resp.) [Dkt 242, 244.] The Webbs have been fully heard on these issues.

Turning to the matter of CBS's attorney's hourly rates, the Webbs argue that all of the claimed rates should be "dismissed out of hand" on the basis that they are not supported by affidavits sufficiently describing the attorneys' experience and qualifications. (Pls.' Resp. at 2.) However, this court previously found the rates charged by Mr. Levine, Mr. Sher, and Ms. Larsen prior to January 1, 2011 to be reasonable in connection with the prior sanctions order in this case, based on affidavits they submitted in support of CBS' earlier motion. (Mem. Op. & Order, Oct. 5, 2010 at 4.) [Dkt 127.] The Webbs did not object to those rates in their response to that motion. (*Id.*) As for the rates charged by Ms. Kissinger and Ms. Kelley, they are what CBS was billed for the work performed. (*See* Def.'s Mem. Mot., Group Ex. B, Aff. Ashley I. Kissinger ¶ 4, Aff. Marla D. Kelley ¶ 4.) A court awards an attorney's hourly rate at the "market rate," and "the best evidence of the market

5

value of legal services is what people pay for it." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005). For this reason, the $15 increase in Mr. Sher, Mr. Levine, Ms. Kissinger, Ms. Kelley's rates in 2011 is also reasonable. Furthermore, while the Webbs objected to the evidence establishing CBS's attorneys' rates, they did not submit evidence of what their own counsel charged for his work on the motions.

That leaves the question of whether the time CBS's legal team spent on the motions was reasonable. Before addressing the Webbs' specific objections to the attorneys' time entries, it is important to recall that the Webbs' and their counsel's misconduct warranting the imposition of sanctions in the first place resulted in a tangled web of documents, deposition testimony, and disputes that had to be sorted through in connection with the underlying motions. *See* May 6, 2011 Opinion at 29: "[T]he Webbs and their counsel have distorted the process of litigating this case beyond any reasonable relationship to the simple claim that is actually at issue." With that said, the Webbs' specific objections to the hours charged are taken in turn.

*1.     Drafting CBS's Renewed Motion for Sanctions*

The Webbs object to much of the time CBS's legal team spent preparing and drafting its renewed motion for sanctions on the basis it was excessive, unnecessary, and involved duplication of effort. (Pls.' Resp. at 2-4.) First, they object to 2.3 hours Ms. Kissinger, a partner at the law firm of Levine Sullivan Koch & Schulz, L.L.P., spent reviewing the case history and formulating strategy for the motion, as well as 26.3 hours Ms. Kissinger spent drafting the motion and supporting declarations and reviewing and finalizing the attached exhibits. (Pls.' Resp. at 2-3; Kissinger Aff.

6

¶¶ 2, 5 (10/8/10-10/15/10 entries).)[3] Although the Webbs claim this time was excessive, the renewed motion for sanctions CBS submitted to the court included a fourteen-page memorandum, a declaration from CBS attorney Ms. Larsen with sixteen attached exhibits, and a declaration from CBS's computer forensics expert James Murray with three attached exhibits. [Dkt 133, 135, 136, 137.] It is true, as the Webbs point out, that the memorandum is sparse on legal citations; however, it is largely devoted to untangling the shifting statements the Webbs made in their depositions and affidavits to the court about relevant discovery documents and reconciling those statements with the results of the Mr. Murray's examination of the Webbs computer. [Dkt 135.] Moreover, the numerous exhibits attached to the motion, which included excerpts from deposition testimony and representative emails and documents uncovered on the Webbs' computer, would reasonably necessitate time to review and edit down. The factual background of CBS' motion was complex. The time Ms. Kissinger spent on these tasks was not excessive and will not be denied or reduced.

Second, the Webbs object to 7 hours Mr. Levine, also a partner at Levine Sullivan Koch & Schulz, L.L.P., spent reviewing and revising the renewed motion for sanctions as duplicative of Ms. Kissinger's work. (Pls.' Resp. at 3; Levine Aff. ¶¶ 2, 5 (10/9/10-10/15/10 entries).) As this court noted in its previous order imposing sanctions, a modest amount of time spent reviewing another attorney's draft is not unreasonable. (Mem. Op. & Order, Oct. 5, 2010 at 4.) Moreover, Mr. Levine was the attorney appearing on the motion before the court. Given these considerations, 7 hours is not excessive.

Third, the Webbs object to the 12.7 hours Ms. Larsen, an associate at Levine Sullivan Koch

---

[3] The Webbs calculated Ms. Kissinger's time spent drafting the motion at 28.1 hours, but the time entries to which they object total 26.3 hours. (Pl.'s Resp. at 2-3; Kissinger Aff. ¶ 5.)

7

& Schulz, L.L.P., spent what the Webbs call "revising" the motion for sanctions. (Pls.' Resp. at 3; Def.'s Mem. Mot., Group Ex. B, Aff. Katharine Larsen ¶¶ 2, 5 (10/13/10-10/15/10 entries).) However, a review of Ms. Larsen's time entries show that her work primarily involved communicating with Mr. Murray, reviewing the results of his forensic examination of the Webbs' computer, reviewing the Webbs' deposition transcripts, identifying and coordinating inclusion of exhibits to the motion, and contributing to the preparation of her own and Mr. Murray's declarations. (Larsen Aff. ¶ 5.) Again, given the convoluted nature of the timeline here, it is unsurprising and not unreasonable that an associate would spend this time sorting through the documents and preparing the supporting exhibits in conjunction with another attorney drafting the brief.[4]

Finally, the Webbs object to 16.9 hours spent by Marla Kelley, a paralegal at Levine Sullivan Koch & Schulz, L.L.P., in "research[ing] case histories" for the motion. (Pls.' Resp. at 3-4; Kelley Aff. ¶¶ 2, 5 (10/14/10-10/15/10 entries).) If indeed all Ms. Kelley had done was research case histories, 16.9 hours would be excessive, given that CBS's memorandum contained only a handful of legal citations. But Ms. Kelley's time entries reflect that her time was also spent reviewing citations and quotations in the memorandum for accuracy and reviewing and preparing the motion, memorandum, and exhibits for filing. (Kelley Aff. ¶5.) However, because Ms. Larsen also billed time for preparing the exhibits for filing, and because nearly 17 hours is somewhat excessive for a paralegal billing at $190 an hour to check the citations in the fourteen-page memorandum submitted here, Ms. Kelley's time is reduced to 13 hours.

---

[4] The Webbs also suggest that the time spent on Mr. Murray's declaration was unnecessary because the Webbs were cooperative in turning their computer over to CBS for examination. (Pls.' Resp. at 10.) However, the Webbs' cooperation in surrendering their computer did nothing to lessen the time CBS's counsel had to spend communicating with Mr. Murray, reviewing his results, and preparing his declaration to the court.

2. *Drafting CBS's Reply in Support of its Renewed Motion for Sanctions*

The Webbs object to the time spent on CBS's reply brief as excessive and duplicative, and argue it should be denied altogether. (Pls.' Resp. at 4-5.) First, the Webbs argue the 24.2 hours Ms. Kissinger spent drafting the reply and supporting declaration and the 5.5 hours Mr. Levine spent revising and finalizing it was excessive. (*Id.* at 4-5; Kissinger Aff. ¶ 5 (11/18/10-12/2/10 entries); Levine Aff. ¶ 5 (11/30/10-12/2/10 entries).) As the Webbs point out, the memorandum ultimately totaled nine pages. [Dkt 168.] However, given the nature of the Webbs' response to CBS's initial motion, CBS's counsel had to deal with a theretofore unknown aspect of the case: that the Webbs and their counsel had been actively concealing a private investigator's report highly relevant to the case, purportedly on the basis of attorney-client privilege. [*See* Dkt 156.] This required Ms. Kissinger again to untangle the statements the Webbs made in their depositions about this report, as well as review the cases the Webbs cited and conduct additional legal research. (Kissinger Aff. ¶ 5; *see also* Decl. Ashley I. Kissinger.) [Dkt 169.] The time spent on these tasks, 24.2 hours, was not unreasonable, nor was the 5.5 hours Mr. Levine spent on revisions, for the reasons stated above.

The Webbs also object that 1.5 hours Mr. Sher, a partner in the law firm of Bryan Cave LLP, spent revising and emailing about the reply memorandum was duplicative. (Pls.' Resp. at 5; Def.'s Mem. Mot., Group Ex. B, Aff. Brian A. Sher ¶¶ 2, 6 (12/1/10 entry).) However, Mr. Sher is local counsel for CBS, and appeared before the court repeatedly in connection with these motions. This modest amount of time contributed to the reply was not unreasonable.

Finally, the Webbs object to Ms. Kelley's 6.2 hours spent checking the citations in the brief for accuracy and preparing the reply, Ms. Kissinger's declaration, and exhibits for filing. (Pls.' Resp. at 5; Kelley Aff. ¶ 5 (12/2/10 entry).) Given the exhibits and the case citations in the brief, the court

does not find this amount of time unreasonable.

        *3.*      *Preparation for Hearing*

The Webbs object as unnecessary to 0.2 hours spent by Ms. Kissinger turning her "attention to the preparation for a hearing" and 3.0 hours Ms. Kelley spent identifying, reviewing, and preparing documents for the hearing. (Pls.' Resp. at 5; Kissinger Aff. ¶ 5 (12/7/10 entry); Kelley Aff. ¶ 5 (12/9/10 entry).) Although the Webbs are correct that Ms. Kissinger did not appear at the hearing, she spent the bulk of the time drafting the motion, and reasonably would need to prepare Mr. Levine, the senior attorney, for his appearance. Moreover, Ms. Kelley's time in identifying and gathering documents for the attorneys to refer to during the motion hearing is not unreasonable given the plethora of documents involved in the renewed motion for sanctions.

        *4.*      *Drafting CBS's Motion to Compel Return of Confidential Documents and to Dismiss*

The Webbs first object to a total of 4.3 hours spent by Mr. Sher in what the Webbs characterize as drafting a four-page affidavit in connection with CBS's motion to compel and to dismiss. (Pls.' Resp. at 6; Sher Aff. ¶ 6 (2/10/11-2/14/11 entries).) However, the Webbs mischaracterize these time entries, which were spent not only writing and revising Mr. Sher's declaration but also communicating with the Webbs' counsel about the discovery disputes and court hearings, reviewing and revising the motion to compel and dismiss, and communicating with CBS's counsel regarding the same. (Sher Aff. ¶ 6.) The time Mr. Sher spent on these tasks was not excessive and will not be reduced.

The Webbs also object to 14.8 hours Ms. Kissinger spent drafting and revising CBS's motion

to compel and to dismiss on the basis that the actual motion was only one page long. (Pls.' Resp. at 6; Kissinger Aff. ¶ 5 (2/10/11-2/14/11 entries).) However, CBS also submitted a nine-page memorandum in support of that motion and it is apparent from her time entries that Ms. Kissinger was also referring to that. [Dkt 191, 192.] That memorandum set out additional misconduct and discovery abuses by the Webbs and their counsel that came to CBS's attention after their prior motion for sanctions had been filed, and CBS argued the whole of their misconduct warranted dismissal as a sanction. [Dkt 192.] The 14.8 hours Ms. Kissinger spent on drafting was well within reasonable limits to prepare a motion arguing for such a serious sanction.

The Webbs further object to 3 hours Mr. Levine spent revising the motion to compel and to dismiss and 0.2 hours he spent reviewing the draft of Mr. Sher's affidavit as duplicative of Ms. Kissinger's work. (Pls.' Resp. at 6-7; Levine Aff. ¶ 5 (2/11/11-2/14/11 entries).) As discussed above, not only was Mr. Levine the senior attorney on the case, but he again appeared before the court on the motion. This modest amount of time on revision and review will not be reduced.

Finally, the Webbs argue that the 3 hours Ms. Kelley spent researching case histories was duplicative because Ms. Kissinger indicated she reviewed the cite check. (Pls.' Resp. at 7; Kelley Aff. ¶ 5 (2/14/11 entry); Kissinger Aff. ¶ 5 (2/14/11 entry).) However, Ms. Kissinger's time entry reflects only that she reviewed Ms. Kelley's cite check while she was finalizing the brief and preparing it for filing. (Kissinger Aff. ¶ 5.) This was not a duplication of effort, and the time will not be reduced.

>    5.  *Drafting CBS's Reply in Support of its Motion to Compel Return of Confidential Documents and to Dismiss*

The Webbs object that 15 total hours Ms. Kissinger spent drafting and reviewing CBS's six-page reply brief in support of its motion to compel and to dismiss was excessive. (Pls.' Resp. at 8; Kissinger Aff. ¶ 5 (3/8/11-3/17/11 entries).) That reply not only addressed the arguments the Webbs' raised in their response to the motion, but raised additional examples of the Webbs' counsel's misconduct in concealing from CBS and the court that he retained confidential CBS documents. [Dkt 209.] That further misconduct had only become apparent from representations made in the Webbs' response. (*Id.*) The time spent by Ms. Kissinger not only responding to the Webbs' position but clarifying these further points in support of the motion was not excessive.

The Webbs also object to the time Mr. Levine (4.8 hours) and Mr. Sher (1.7 hours) spent reviewing and revising the reply brief. (Pls.' Resp. at 7; Levine Aff ¶ 5 (3/7/11-3/8/11, 3/14/11, 3/17/11 entries); Sher Aff. ¶ 6 (3/17/11 entry).) For reasons discussed above, this time was not unnecessarily duplicative, and will not be reduced.

As for the Webbs' objection to the 6.7 hours Ms. Kelley spent researching case histories, checking citations, and preparing the documents for filing, this time is somewhat excessive given that the reply brief contained no case citations. (Pls.' Resp. at 8; Kelley Aff. ¶ 5 (3/15/11-3/17/11 entries); *see also* Def.'s Reply Mot. Compel.) [Dkt 209.] However, the brief contained several citations to documents and it is apparent that Ms. Kelley checked those for accuracy. Therefore, her time will be reduced to 5 hours.

6. *Drafting CBS's Supplemental Memorandum in support of its Motion to Compel Return of Confidential Documents and to Dismiss*

The Webbs object to 5.9 hours Ms. Kissinger spent drafting CBS's supplemental brief in support of its motion to compel and dismiss. (Pls.' Resp. at 8; Kissinger Aff. ¶ 5 (3/21/11-3/23/11 entries).) That briefing became necessary after the Webbs produced to CBS documents they had subpoenaed in this case without notice to CBS and on a date well beyond the close of fact discovery. [*See* dkt 210.] Given the additional issues raised by the Webbs' discovery violation, Ms. Kissinger's time spent laying out the timeline of events and arguing in further support of CBS's motion was reasonable.

The Webbs also object to 1.5 hours Mr. Levine spent in reviewing the subpoena and the supplemental brief. (Pls.' Resp. at 8-9; Levine Aff. ¶ 5 (3/21/11-3/23/11 entries).) That time was not unnecessarily duplicative.

Finally, the Webbs object to 4 hours Ms. Kelley spent on what they characterize as researching case histories, checking case citations, and drafting a declaration for Ms. Kissinger. (Pls.' Resp. at 8; Kelley Aff. ¶ 5 (3/23/11 entry).) However, review of Ms. Kelley's time entries show that, in addition to those tasks, she also prepared the brief and identified and prepared the three exhibits for filing. (Kelley Aff. ¶ 5; *see also* Def.'s Mem. Supp. Mot. Compel.) [Dkt 210.] Given the various tasks performed, Ms. Kelley's time was reasonable.

7. *Drafting CBS's Response to the Webbs' Motions to Supplement their Reply to the Court's Query*

The Webbs again object to 12.4 hours Ms. Kissinger spent drafting a reply to the Webbs' response to the court's query as excessive. (Pls.' Resp. at 9; Kissinger Aff. ¶ 5 (4/5/11-4/7/11,

13

4/11/11 entries).) That time resulted in an eight-page document in which CBS not only addressed the various arguments raised by the Webbs in their reply, but also brought to the court's attention that the Webbs had potentially violated the Agreed Protective Order in this case by citing confidential deposition testimony in their publicly-filed brief, for which CBS sought to place the Webbs' reply under seal. [Dkt 224.] Ms. Kissinger also spent some of this time drafting her declaration in support of the response, which was accompanied by several exhibits. (Kissinger Aff. ¶ 5 (4/7/11 entry).) The time Ms. Kissinger spent on these various tasks was far from unreasonable.

Moreover, although the Webbs again object to it as duplicative, the time revising CBS's response by Mr. Levine (1.0 hour) and Mr. Sher (1.0) was not duplicative or excessive given their roles as lead counsel and local counsel in this case.[5] (Pls.' Resp. at 9; Levine Aff. ¶ 5 (4/8/11 entry); Sher Aff. ¶ 6 (4/9/11 entry).)

Finally, the 3.0 hours Ms. Kelley spent cite-checking and preparing the brief and exhibits for filing was reasonable given the number of legal and factual citations in the brief and the exhibits attached to the motion. (Kelley Aff. ¶ 5 (4/11/11 entry); *see also* Def.'s Opp'n. Mot. Suppl.) [Dkt 224.]

### 8.     *Review of Tracy Reardon Deposition*

The Webbs object to 0.8 hour that Mr. Levine spent "reviewing an analysis of the Tracy Reardon deposition" as unnecessary to CBS's motion for sanctions, arguing he would have been required to review the testimony in the course of representing CBS. (Pls.' Resp. at 9-10; Levine Aff.

---

[5] Although the Webbs object to 1.0 hour of Mr. Levine's time for this task, his billing records indicate a block total of 2.4 hours that day for revising the reply and other tasks associated with the reply. This time was not unreasonable.

¶ 5 (4/12/11 entry).) However, the Webbs quoted to numerous portions of Ms. Reardon's deposition in their Reply to the Court's Query [dkt 213 at 6-10], which reasonably necessitated re-review in order for CBS to specifically respond to those portions of the deposition.

9. *Reports to "N. Waltman"*

The Webbs object to time sought by Mr. Levine for reports he rendered to an "N. Waltman," on the grounds that such an individual has not been identified or filed an appearance in this case. (Pls.' Resp. at 10; Levine Aff. ¶ 5 (10/14/10, 12/1/10, 12/16/10, 2/14/11, 3/15/11, 3/23/11 entries).) While the Webbs are correct that Naomi Waltman has not filed an appearance on behalf of CBS, her name has appeared on all of the relevant pleadings and documents filed on the docket in this case as "of counsel," and CBS represents that Ms. Waltman is CBS's in-house counsel. (*See, e.g.,* Ans. at 18; Def.'s Reply at 5.) [Dkt 5, 246.] The time CBS's in-house and outside counsel spent consulting about the case was appropriate.

10. *CBS's Costs*

The Webbs have not objected to the $493.46 CBS requests for Mr. Levine's travel expenses on December 15 and 16, 2010, which he avers was necessary to attend a hearing before this court "in connection with the presentation of the filings at issue." (Levine Aff. ¶ 6 and Ex. A.) CBS has attached documentation supporting those travel costs. (Levine Aff., Ex. A.) However, the court did not conduct a hearing on any of the motions relevant here on that date, but rather conducted a status hearing and hearing on several motions brought by the Webbs. [*See* dkt 176.] Therefore, these costs are not added to the total sanction amount.

**Conclusion**

For the reasons explained above, CBS's reasonable attorneys' fees and costs are awarded in the total amount of $72,873.50, calculated as follows: (1) a total of $13,818 for attorney Lee Levine ((17.4 hours @ $375 = $6525) + (18.7 hours at $390 = $7293)); (2) a total of $39,046 for attorney Ashley Kissinger ((53.1 hours @ $350 = $18,585) + (55.3 hours @ $370 = $20,461)); (3) a total of $9213 for attorney Brian Sher ((3.8 hours @ $435 = $1653) + (16.8 hours @ $450 = $7560)); (4) a total of $3556 for attorney Katherine Larsen (12.7 hours @ $280); and (5) a total of $7,240.50 for paralegal Marla D. Kelley ((22.2 hours @ $190 = $4218) + (15.5 hours @ $195 = $3,022.50)). (*See* Levine Aff. ¶ 5, Kissinger Aff. ¶ 5, Sher Aff. ¶ 6, Larsen Aff. ¶ 5, Kelley Aff. ¶ 5.) Added to the previously calculated $3,241.25 in fees and costs charged by CBS's computer forensics expert and the $414.29 costs CBS incurred to resume the Webbs' depositions, the total sanction amount is $76,529.04. The Webbs and their counsel are jointly and severally liable for $76,529.04, and shall remit payment to CBS within 30 days of this order.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

Dated: September 28, 2011