**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JILL and ROBERT WEBB, in their own proper persons, and as parents and next friends of their minor children, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 6241 |
| v. | ) ) | |
| CBS BROADCASTING, INC., *et al.,* | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 13, 2011, the Court granted Defendant CBS Broadcasting, Inc.'s ("CBS") summary judgment motion and dismissed this lawsuit in its entirety. Before the Court is Plaintiffs' motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). Because the Court did not commit a manifest error of fact or law in its September 13, 2011 Memorandum, Opinion, and Order, the Court, in its discretion, denies Plaintiffs' reconsideration motion. *See Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'").

## LEGAL STANDARD

Rule 59(e) permits parties to file, within twenty-eight days of the entry of judgment, a motion to alter or amend the judgment. *See* Fed.R.Civ.P. 59(e). Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or consider newly discovered material evidence. *See Seng-Tiong Ho v. Taflove,* 648 F.3d 489, 505 (7th Cir.

2011); *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures" or "introduce new or advance arguments that could and should have been presented to the district court prior to the judgment." *Resnick,* 594 F.3d at 568 (citation omitted); *see also County of McHenry v. Insurance Co. of the West,* 438 F.3d 813, 819 (7th Cir. 2006). Whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *Matter of Prince,* 85 F.3d 314, 324 (7th Cir. 1996); *see also Resnick*, 594 F.3d at 568 (appellate court reviews denial of Rule 59(e) motion for abuse of discretion).

## BACKGROUND

In their First Amended Complaint, Plaintiffs Jill and Robert Webb, on their own and as parents and next friends of their minor children, alleged Illinois common law claims of intrusion upon seclusion (Count I) and intentional infliction of emotional distress (Count II) against CBS. After CBS filed its motion for summary judgment, Plaintiffs responded to both the summary judgment motion and CBS's Local Rule 56.1(a)(3) Statement of Facts. As the Court explained in its September 13, 2011, Memorandum, Opinion, and Order, many of Plaintiffs' Local Rule 56.1(b)(3)(B) Responses did not meet the local rules' requirements, and thus the Court deemed many of CBS's facts as true for purposes its summary judgment motion. *See, e.g.,* ¶¶ 30-32, 37-30, 44-45.

## UNDISPUTED FACTS

Plaintiffs Jill and Robert Webb, who are residents of Iowa, were present with their minor children at the Plainfield, Illinois home of Jill Webb's brother, Craig Stebic, on the day of the events giving rise to this lawsuit, July 6, 2007. Defendant CBS is a corporation that owns and

2

operates Chicago television station WBBM. Former Defendant Tracy Reardon is Craig Stebic's neighbor.

Craig Stebic and his wife, Lisa Stebic, were divorcing when Lisa disappeared from their Plainfield home on April 30, 2007. Lisa Stebic's disappearance and the investigation of her disappearance were the focus of wide-spread public attention. At some point in July 2007, local police authorities named Craig Stebic as a person of interest in their investigation of his wife's disappearance. Prior to July 6, 2007, law enforcement authorities closely monitored the Stebics' house by placing two video cameras on utility poles that focused on the Stebics' house and backyard and recorded activities in that area.

Also prior to July 6, 2007, numerous news organizations dispatched reporters and videographers to the Stebics' home to record activities taking place there. One such reporter, who worked for Chicago's NBC station WMAQ, Amy Jacobson, made efforts to find out what happened to Lisa Stebic and quickly established a rapport with Jill and Robert Webb. Prior to July 6, 2007, Jacobson had spoken with Craig Stebic and Jill Webb and had been to the Stebics' home. Jill Webb and Craig Stebic together telephoned Jacobson and invited her to visit the Stebics' home on Friday, July 6, 2007. Jacobson, who testified that she had otherwise planned to take her children to a community swimming club the morning of July 6, 2007, instead took her children to the Stebics' house, where she and her children, the Webbs and their children, and Craig Stebic proceeded to interact in and around the swimming pool in the Stebics' backyard. Jacobson visited the Stebics' house in her capacity as a television news reporter covering the story.

A community search for Lisa Stebic was planned for July 7, 2007. On July 6, 2007, Michael Puccinelli, a CBS reporter at Chicago television station WBBM, was assigned to prepare a news report on the July 7, 2007 search. In the morning of July 6, 2007, Nathan DeLack, a CBS employee and videographer at WBBM, drove Puccinelli to Plainfield. Upon arriving in Plainfield, Puccinelli – who hoped to interview a Stebic family member about the next day's community search for Lisa Stebic – rang the bell at the Stebics' front door, but Robert Webb told him that the family did not wish to speak to him.

After Robert Webb turned Puccinelli away from the Stebic house, DeLack and Puccinelli drove around the corner to the home occupied by Reardon and William Alstrom, to whom Puccinelli had previously spoken. Alstrom invited Puccinelli into the house to talk. Puccinelli testified that from Reardon's home, he could see that people were gathered in the Stebics' backyard. Puccinelli further testified that he was surprised to see that Craig Stebic had guests at his house the day before the search for his missing wife.

Thereafter, Puccinelli asked DeLack to videotape the events in the Stebics' backyard because he thought the events were newsworthy. Alstrom then gave DeLack and Puccinelli permission to bring the video camera – which had a zoom lens – into the Alstrom/Reardon home and to set up the camera in front of one of the kitchen windows on the first floor. In the subsequent videotape, Craig Stebic, Jacobson, the Webbs, and the children are seen around the Stebics' swimming pool, as well as passing through a sliding glass door between the house and the pool deck. CBS aired a version of the videotape on a CBS broadcast on July 10, 2007.

# THE COURT'S SUMMARY JUDGMENT RULING

## I    Count I – Intrusion Upon Seclusion

Due to the relevant statute of limitations, Plaintiffs' intrusion upon seclusion claim was limited to the act of the videotaping itself, and not the subsequent publication, namely, the July 10, 2007 broadcast on CBS. Under Illinois law, the common law claim of intrusion upon seclusion – which is a form of an invasion of privacy claim – includes the following elements: "(1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney v. Chicago Public Sch.,* 407 Ill.App.3d 358, 366, 347 Ill.Dec. 733, 943 N.E.2d 23 (1st Dist. 2010).

Under the first element, the Webbs were required to establish that when DeLack and Puccinelli videotaped them, they were in a place a reasonable person would believe to be secluded. *See Busse v. Motorola, Inc.,* 351 Ill.App.3d 67, 71, 286 Ill.Dec. 320, 813 N.E.2d 1013 (1st Dist. 2004); *Webb v. CBS Broad. Inc.,* No. 08 C 6241, 2009 WL 1285836, at *3 (N.D. Ill. May 7, 2009); *see also Acosta v. Scott Labor, LLC,* 377 F.Supp.2d 647, 650 (N.D. Ill. 2005). The third element of an intrusion upon seclusion claim required that Plaintiffs "attempted to keep private facts private." *See Acosta,* 377 F.Supp.2d at 650. Put differently, "persons cannot reasonably maintain an expectation of privacy in that which they display openly." *Id.* (citation omitted); *see also Carroll v. Lynch,* No. 07 C 1575, 2011 WL 1838563, at *23 (N.D. Ill. May 13, 2011) ("Two prerequisites of an intrusion upon seclusion claim are an allegation that the prying included 'private facts,' such as details of a person's financial, medical or sexual life, and that the Plaintiff has "attempted to keep private facts private.") (citation omitted).

Although it is undisputed that the Webbs did not consent to having their conduct videotaped on July 6, 2007, uncontested evidence in the record establishes that their activities at the Stebics' swimming pool and backyard were in plain view, and thus not secluded. More specifically, the rear of the Stebics' backyard adjoins an open, grassy area through which members of the public walk to reach a pond that is within the block on which the Stebics' house is located. Although the Stebics built a fence around their pool as required by a local safety ordinance, because the fence sits at the bottom of a hill and the pool deck is higher than the base of the fence, it is undisputed that the majority of the Stebics' backyard is visible to the naked eye from the first-floor windows of the Reardon/Alstrom house. Indeed, a licensed professional land surveyor surveyed the Stebics' property and surrounding area and concluded that the Reardon/Alstrom house and yard, as well as portions of the public street, sidewalk, and grassy area, all sit atop a hill that rises three to five feet above the Stebics' backyard. Further, there is undisputed evidence in the record that the videotape made by DeLack from the Reardon/Alstrom kitchen window could have been made from the public sidewalk or public street because the Stebics' backyard was visible to the public from many vantage points. *Cf. United States v. Conrad,* 578 F.Supp.2d 1016, 1029 (N.D. Ill. 2008) ("Fourth Amendment does not prohibit a police officer's naked eye observations made of a constitutionally protected area from the vantage point of a public place"). Meanwhile, although DeLack used a zoom lens in videotaping the Stebics' backyard, when objects are in plain view, there is no legitimate expectation of privacy. *See Acosta,* 377 F.Supp.2d at 650-51.

After viewing the facts and all reasonable inferences in Plaintiffs' favor, the Court concluded that Plaintiffs had failed to establish a genuine dispute as to any material fact

regarding the first and third elements of a common law intrusion upon seclusion claim because their activities at the Stebics' swimming pool and backyard were in plain view, the Webbs' conduct was openly displayed, and a passerby on the street or in the grassy area behind Stebics' yard could observe what DeLack and Puccinelli saw. *See Schiller v. Mitchell,* 357 Ill.App.3d 435, 441, 293 Ill.Dec. 353, 828 N.E.2d 323 (2d Dist. 2005). Because the elements of a claim for intrusion on seclusion are cumulative, the Court did not discuss whether the intrusion would be highly offensive to a reasonable person or if the intrusion caused the Webbs anguish and suffering. *See Busse,* 351 Ill.App.3d at 71-72. As such, the Court granted CBS's summary judgment motion as to Count I of Plaintiffs' First Amended Complaint.

## II.     Count II – Intentional Infliction of Emotional Distress

Plaintiffs also brought a common law intentional infliction of emotional distress ("IIED") claim. To prove an IIED claim under Illinois law, a plaintiff must establish that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El v. Cook County Sheriff's Dep't,* 602 F.3d 852, 864 (7th Cir. 2010) (citation omitted). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (citation omitted). Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct. *See Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 20-21, 180 Ill.Dec. 307, 607 N.E.2d 201 (Ill. 1992). Also, the Webbs were required to establish that their distress was "so severe that no reasonable man could be expected to endure it." *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 276, 278 Ill.Dec.

7

263, 798 N.E.2d 75 (Ill. 2003).

Although Plaintiffs set forth evidence that Jill Webb contacted CBS explaining that she was upset about the broadcast of the videotape, Plaintiffs have failed to present any evidence that CBS's conduct in videotaping them in Craig Stebic's backyard caused them distress that was so severe that no reasonable person could expect to endure it. *See id.* Also, even though Puccinelli's and DeLack's conduct in videotaping Craig Stebic and his guests at the Stebics' pool was unwelcome, this conduct was not so outrageous that it went beyond all possible bounds of decency, especially in light of the fact that the police had the Stebic house and backyard under 24-hour video surveillance. Also, Plaintiffs were required to establish that DeLack and Puccinelli intended to inflict severe emotional distress or knew that there was a high probability that their conduct would cause the Webbs severe emotional distress. *See Schiller,* 357 Ill.App. 3d at 447. The facts in the record clearly established that Puccinelli and DeLack videotaped the Stebics' backyard because Amy Jacobson and Craig Stebic were there, not because the Webbs and their children were in the backyard. Accordingly, the Court granted CBS's summary judgment motion as to Count II of Plaintiffs' First Amended Complaint.

## ANALYSIS

In their Rule 59(e) motion for reconsideration, Plaintiffs argue that the Court misunderstood the facts, issues, and Plaintiffs' arguments in response to CBS's motion for summary judgment. First, Plaintiffs argue that the filming of the Stebic's backyard and pool was not the only issue in this lawsuit, but that DeLack also filmed directly into Stebic's house and that filming into a private home without permission is illegal in Illinois. In their summary judgment filings, however, Plaintiffs only mention the filming into the Stebics' house once – in

passing – and without any cogent legal argument. (*See* R. 271, Pls.' Resp., at 7.) Moreover, the undisputed facts establish that the videotape at issue showed Craig Stebic, Jacobson, the Webbs, and the children around the Stebics' swimming pool, as well as passing through a sliding glass door between the house and the pool deck – not further inside the house – and that this videotape could have been made from the public sidewalk or street. (R. 250, Def.'s Stmt. Facts ¶¶ 32, 42, 44, 45.) Hence, any claim based on the filming of the individuals passing through the sliding glass door fails for the same reasons that Plaintiffs' claim concerning the filming by the swimming pool failed, namely, that they were not in a place that a reasonable person would have believed to have been secluded. *See Busse,* 351 Ill.App.3d at 71; *Webb,* 2009 WL 1285836, at *3. Plaintiffs' first argument on reconsideration thus fails.

Next, Plaintiffs argue that the Court's reliance on *Schiller v. Mitchell,* 357 Ill.App.3d 435, 293 Ill.Dec. 353, 828 N.E.2d 323 (2d Dist. 2005), was erroneous because *Schiller* did not involve videotaping the inside of a person's dwelling with a hidden camera. In *Schiller*, individuals continuously videotaped their neighbors' activities that took place in the neighbors' yard and inside their garage. *See id.* at 439. The Illinois Appellate Court affirmed the trial court's dismissal of Plaintiffs' intrusion upon seclusion and intentional infliction of emotional distress claims concluding that the areas photographed were not private. *See id.* Also, the Illinois Appellate Court concluded that the videotaping of the plaintiffs' home, garage, and backyard may have been annoying, but did not amount to "atrocious and utterly intolerable behavior" under Illinois IIED law. *See id*. at 448. As such, not only was the *Schiller* case highly instructive in the present matter regarding both the intrusion upon seclusion and IIED claims, Plaintiffs had every opportunity to rebut CBS's reliance on *Schiller* in their response brief and

9

sur-reply, but failed to do so. Plaintiffs' last minute attempt to factually distinguish *Schiller* fails to save the day because Rule 59(e) is not a vehicle for parties to undo their own failures or introduce new arguments that they should have made prior to a court's judgment. *See Resnick,* 594 F.3d at 568. Also, Plaintiffs' argument concerning the *Schiller* holding makes a distinction without a difference under the circumstances. Therefore, Plaintiffs' second reconsideration argument is without merit.

Plaintiffs further argue that the "use of chicanery and subterfuge by broadcasting companies to invade the privacy of citizens and secure unwitting interviews of them has long been condemned." Plaintiffs do not explain how this argument establishes that the Court committed a manifest error of law or fact in granting CBS's summary judgment motion. *See Heyde v. Pittenger,* 633 F.3d 512, 521 (7th Cir. 2011). Moreover, this argument does not involve any newly discovered evidence. *See id.* Similarly, Plaintiffs argue that there is an Illinois Constitutional guarantee to the right to privacy. Again, it is not entirely clear how this argument fits into the rubric of a motion for reconsideration pursuant to Rule 59(e) and Plaintiffs do not explain how this constitutional guarantee interfaces with their common law intrusion upon seclusion claim.

In addition, Plaintiffs contend that the Court's reliance on police surveillance to justify CBS's alleged invasion of privacy was misplaced. In discussing Plaintiffs' intrusion upon seclusion claim, the Court cited *United States v. Conrad,* 578 F.Supp.2d 1016, 1029 (N.D. Ill. 2008), with the signal *Cf.*, which means that the cited authority supports a proposition that is different from the main proposition, but is sufficiently analogous to lend support. *See The Bluebook: A Uniform System of Citation*, Rule 1.2 (19th ed. 2010). The Court's use of this

citation was simply to compare the circumstances of this case with that under the Fourth Amendment, which does not prohibit a police officer's naked eye observations from a public place. *See Conrad,* 578 F.Supp.2d at 1029. As such, the Court's reliance on the *Conrad* decision was not misplaced, nor was it outcome determinative.

In the same vein, Plaintiffs assert that the Court impermissibly relied upon the actual police surveillance of the Stebics' home in concluding that CBS's conduct in videotaping was not outrageous under Illinois' IIED standard. Again, the Court used the police surveillance as a comparison. And, in any event, Plaintiffs have failed to establish that DeLack and Puccinelli intended to inflict severe emotional distress or knew that there was a high probability that their conduct would cause the Webbs severe emotional distress because the Webbs and their children were not the targets of the videotaping – Amy Jacobson and Craig Stebic were.

Plaintiffs also take umbrage with the professional land surveyor's conclusions and argue that it is highly disputed whether their activities in the Stebics' backyard were in plain view. As the Court explained when granting CBS's summary judgment motion, the only evidence Plaintiffs presented to refute the professional land surveyor's results consisted of photographs without sufficient supporting affidavits. *See Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 496 (7th Cir. 2006) (documents must be authenticated by affidavit and affiant must be person through whom exhibits could be admitted into evidence); Fed.R.Civ.P. 56(c)(4). The Court also reasoned that even if these photographs were admissible evidence, the photographs and supporting affidavit did not refute the professional land surveyor's results because they did not reflect the physical measurements of the yard, fence, and surrounding areas. In short, Plaintiffs' rehashed argument concerning the unauthenticated photographs does not establish that the

Court's decision was a manifest error of law or fact. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996) (reconsideration motion not appropriate vehicle for losing party to rehash previously rejected arguments).

On a final note, throughout Plaintiffs' motion for reconsideration they rely on case law that is either irrelevant or that they mischaracterize in an attempt to revive their unmeritorious claims. *See, e.g., Wilkie v. Robbins,* 551 U.S. 537, 553, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (*Bivens* action brought by rancher concerning easement); *Cantrall v. American Broad. Co.,* 529 F.Supp. 746 (N.D. Ill. 1981) (discussing defamation and false light claims under Illinois law). Plaintiffs' reliance on these cases does not clarify their position, but just adds more clutter for the Court to dig through in determining their motion for reconsideration.

In sum, Plaintiffs' factual arguments on reconsideration are without merit. Also, although Plaintiffs disagree with the Court's legal reasoning, they have failed to present any arguments exposing error in the Court's reasoning for granting CBS's summary judgment motion in its entirety. *See Seng-Tiong Ho,* 648 F.3d at 505. Without more, Plaintiffs have failed to show that the Court committed a manifest error of law or fact as required under Rule 59(e). Last, Plaintiffs did not offer any newly discovered evidence. Therefore, the Court, in its discretion, denies Plaintiffs' Rule 59(e) motion for reconsideration. *See Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir. 2008) ("Relief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case").

## CONCLUSION

For the these reasons, the Court denies Plaintiffs' motion for reconsideration brought pursuant to Federal Rule of Civil Procedure 59(e).

**Date:** October 17, 2011

          **ENTERED**

          _____
          **AMY J. ST. EVE**
          **United States District Court Judge**